### Tilden Ames and Another v. The Port Huron Log Driving and Booming Company.

The act to provide for the formation of Rafting Companies (*Laws of* 1855, *p.* 55; *Comp. L. ch.* 66) in so far, at least, as it provides for the formation of companies, and their power to make contracts, is constitutional and valid.

The affidavit to be made by two directors of the Company, under section two of said act, is sufficient if made strictly according to the terms of said section, and it need not contain any detailed statement of the proceedings had in the formation of the Company.

The delivery by a person of a list of his log-marks to a company formed under the said act, does not operate as a contract for the receiving by the Company of all logs so marked that he may have upon the stream, within the limits of the Company's operations. The object of the provision requiring such list was to entitle the person furnishing it to notice of sale in case, by any casualty, his logs should become so placed as to authorize the Company to assume their management.

In the absence of any contract, such Company is only authorized to assume control of the logs of others, and acquire a lien for services with respect thereto, where, by reason of the logs having been put into the stream without adequate provision for running them without obstruction, some obstruction has actually been created.

*Heard January 7th. Decided January 13th.*

Error to St. Clair Circuit.

Replevin, brought by plaintiffs in error, for saw-logs, claimed by them under a purchase from the Black River Steam Mill Company. On the trial, the parties agreed in writing upon the facts in the case, and submitted the same to the court for its judgment.

Defendants claim to be a corporation, organized under "An Act for the Formation of Companies for Running, Driving, Booming, and Rafting Logs, Timber, and Lumber, and for regulating the Floatage thereof," approved February 9th,

1855. The evidence of their organization is contained in a copy of their articles of association, and an affidavit (of which the following is a copy):

"*State of Michigan, St. Clair County, ss.* Personally appeared before me, a notary public of St. Clair county, Alvah Sweetser, Christ. Reeve, Henry Fish, and Lewis Brockway, who, being by me first duly sworn, severally make oath and say: That they were elected directors of the Port Huron Log Driving and Booming Company, formed on the 1st day of March, 1855, at Port Huron, St. Clair county, pursuant to previous notice, published in the Port Huron Commercial, a newspaper published in said village; and that the articles of association hereto attached and signed, are the articles of association of said Company, and that all prior proceedings of said association have been in strict conformity with all the provisions of 'An Act to provide for the Formation of Companies for Running, Driving, Booming and Rafting Logs, Timber, and Lumber, and for regulating the Floatage thereof,' approved February 9th, A. D. 1855." (Signed and sworn to.)

This affidavit, plaintiffs claimed, was not in compliance with the law, and defendants were not, therefore, properly organized.

The remaining facts in the case are sufficiently stated by the Court.

The circuit judge ordered judgment for defendants, and plaintiffs brought the case to this Court, for review on bill of exceptions.

*Mitchell & McAlpin,* for plaintiffs in error:

1. The act under which defendants claim to be organized, is unconstitutional. It is in derogation of common right. It assumes to give any company organized under its provisions, the power and right to take charge and control of any public stream or waters within this state, and to bar all others of right thereto and therein. It is in conflict with section 4, article 18 of the Constitution, which provides that "No navi-

gable stream in this state shall be either abridged or dammed; without authority from the board of supervisors of the proper county, under the provisions of law. No such law shall prejudice the right of individuals to the free navigation of such streams," &c.

The whole intent and scope of the law is to give any company, organized under it, the entire and absolute control of the stream they may choose to do business upon. The company is made the sole arbiter and judge of the manner the stream shall be used, what are obstructions, and when they shall be removed.

And, notwithstanding all its provisions to the contrary, it puts such company in the sole control of such stream, and ousts all others from its use and navigation. Such, at least, have been found to be its practical operations.

2. The affidavit attached to the articles of association is not sufficient. We claim that to comply with the true intent and meaning of this provision of the act, the affidavit should not merely have recited the statute, but should have stated fully all the proceedings, so that a court might determine as to their regularity.

3. The services performed by defendants were entirely gratuitous, and they are not entitled to charge for them. Nothing but the negligence of the owner in not providing adequate help, or permitting obstructions, could authorize the Company to take possession of and have a lien upon the logs. Nothing of the kind is claimed to have existed in this case.

4. Defendants, if they had a valid lien, could not become purchasers at the sale made to enforce it. They could not be both buyers and sellers at the same time. — 14 *Pick.* 356; 2 *Mich.* 192; *Walk. Ch.* 346; 1 *Mason*, 341; *Harr. Ch.* 259; 2 *Johns. Ch.* 241;

*Conger & Harris*, for defendants in error:

1. The rights and liabilities of individuals, and of the public, upon the navigable streams of this state, and especially those

connected with the vast lumbering operations on its waters, were clearly defined in *Moore v. Sanborn,* 2 *Mich.* 519. The law in question was passed at the next session of the Legislature thereafter, and its provisions coincide with, and conform to, that decision. — See, also, *Angell on Water Courses,* 546, 550; 1 *McLean,* 350; 2 *McLean* 376; 10 *Johns.* 237; 2 *Fairf.* 278; 3 *N. H.* 321; 31 *Maine,* 9. The object, design, and operation of the law accords as well with the spirit of these cases as with the Constitution.

2. No affidavit was necessary to the corporate existence of the Company, but only for evidence of its organization. But whether necessary or not, plaintiffs are estopped from questioning the corporate existence of defendants, — 1st, By commencing a suit against them as a corporation; 2d, By sending them a list of their marks, and leaving to them the management of their logs through that part of the stream over which defendants' operations extended. By this act, in view of the law, the parties enter into mutual obligations; and by the implied contract defendants are to perform the labor, and give notice of sale; and plaintiffs assent to and acknowledge their liability to pay the assessment.

3. The Court will not review a decision of the court below on questions of fact. — *Snow v. Perkins,* 2 *Mich.* 241; *Clapp v. Bromagen,* 9 *Cow.* 530; *Trowbridge v. Baker,* 1 *Cow.* 261; *Whitney v. Sutton,* 10 *Wend.* 413; *Miller v. Chaffee,* 1 *Mich.* 257; *Sweetzer v. Mead,* 5 *Mich.* 107.

CAMPBELL J.:

The plaintiffs in error replevied certain saw logs, which the defendants in error had taken and sold as the property of the Black River Steam Mill Company (who then owned them) to satisfy an alleged lien, under section six of "An Act to provide for the Formation of Companies for Running, Driving, Booming, and Rafting Logs, Timber, and Lumber, and for regulating the Floatage thereof," approved February 9th, 1855. — 1 *Comp. L. p.* 624, *et seq.*

The case shows that the defendants, without any contract or request on the part of the Black River Steam Mill Company, took the logs in question, and ran them down Black River to the Mill Company's boom, where they were taken by the Mill Company's servants and put inside of the boom, whence they were seized and removed by the defendants, and sold for the expenses of running, and bought in by the defendants. The Mill Company had given a list of log-marks under section eight of the act, and the sale was regular, if authorized.

The first objection is to the constitutionality of the act of incorporation. We have no doubt that, so far as it provides for the formation of companies, and their power to make contracts, the act is valid. The view we have taken of this case renders it entirely unnecessary to determine whether any other portion of the law is invalid or not.

It is also objected, that the affidavit annexed to the articles of association is insufficient, in not setting forth the facts in detail. The law provides for a call, and a meeting in pursuance of published notice, at which meeting articles are to be subscribed, which are subsequently filed. Directors are to be elected at such meeting, two of whom are required to make an affidavit "setting forth that all prior proceedings of said association had been in strict conformity with all the provisions of this act"; which affidavit is to be endorsed on, or annexed to, the articles. The object of this affidavit is to provide that no articles shall be filed which were not fairly and openly signed at a public meeting; and the affidavit is made not conclusive, but only presumptive evidence. We think the act is satisfied by an affidavit made strictly according to its terms, and that the law does not require any detailed statement of facts. The affidavit before us contains the recital required by the act, and is in due form.

The question next arises whether the defendants had any legal lien upon the logs, which they could enforce by sale, under the act. It is claimed, in their behalf, that the deliv-

ery, by the clerk of the Steam Mill Company, of a list of log-marks, operated as a contract for the running of all logs so marked. We think this is not so. The first clause of the eighth section provides that the log-driving company shall keep posted up a list of their members, *and of all persons whose logs they have contracted to run,* with a description of their several marks. The next clause provides that *any other person* may furnish and have posted a like list, and shall be entitled to thirty days' notice of the sale of any logs upon which the company may have any lien for services. As the preceding clause had covered all cases of contract, it would be doing violence to the language of the law to hold that the last clause had any reference to contractors, or that filing a list of marks constituted a contract, or a request for any services. Its only object was to entitle the person filing to notice of sale in case, by any casualty, his logs should become so placed as to authorize the log-driving company to assume their management, and thus acquire a lien upon them. Inasmuch as there was no contract, the question next arises whether the case shows such a contingency to have happened as authorized the defendants to assume control over the logs, in order to run them down the river. This was only authorized by the sixth section, in cases where, by reason of logs having been put into the stream without adequate provision for running them without obstruction, some obstruction had actually been created. In such case, the log company was authorized to break the obstruction, and run the logs down, and hold a lien upon them for that service. The case does not show that when the logs were taken in charge, any such accident had occurred, and the act of the defendants was therefore wholly unauthorized, and gave them no claim to compensation under the section referred to. This being so, it is not necessary to inquire into the validity of that section, or into the further questions raised upon the argument.

AMES *v.* PORT HURON LOG DRIVING & BOOMING CO.

The court below erred in sustaining the claim of the defendants upon the facts of the case, and the judgment below must be reversed, and a new trial granted.

The other Justices concurred.