## The People on relation of Theodore A. Drake v. Daniel Mahaney.

*Judicial notice.* — Courts are bound, judicially, to take notice of what the law is, and to enable them to determine whether all the constitutional requisites to the validity of a statute have been complied with, it is their right, as well as duty, to take notice of the journals of the Legislature.

But, although the Courts are bound to take judicial notice of legislative action, so far as it affects the validity of statutes, they have no such power as respects the facts attending the election of the several members of the Legislature, even after such facts have been spread upon the legislative journals.

*Constitutional law — each house exclusive judge of election of its own members.* — The constitution (Sec. 9, Art. 4,) providing that "each house shall judge of the qualifications, elections and returns of its members," confers upon each house powers of a judicial nature, in the exercise of which its decision is conclusive, and not subject to review by the Courts.

Therefore an act of the Legislature cannot be declared void because a portion of the members voting for it, and whose votes were necessary to its passage, were not legally elected, and were retained in their seats by a decision opposed to the constitution.

THE PEOPLE *v.* MAHANEY.

*Constitutional law — Legislative acts, their title.* — The provision of the constitution (Sec. 20, Art. 4,) that "no law shall embrace more than one object, which shall be expressed in its title," was designed to prevent, 1st, the joining in the same bill subjects diverse in their natures, and having no necessary connection; and, 2d, the insertion of clauses in a bill of which the title gives no intimation.

*Detroit Police Act* — The Police Act for the City of Detroit (Laws 1865, p. 99) has for its object the single purpose of establishing a police government for that city, and this object is fairly indicated by its title. It is, therefore, not in conflict with the provision of the constitution above quoted.

*Constitutional law — Legislative acts amending prior acts by implication.* — A law which does not assume, in terms, to revise, alter, or amend any prior act, or section of an act, but by various transfers of duties has an amendatory effect by implication, although it expressly repeals all inconsistent acts, does not conflict with Sec. 25 of Art 4, of the constitution.

It is not the meaning of this provision of the constitution that upon the passage of each new law, all prior laws which it may modify by implication shall be re-enacted, and published at length as modified.

*Constitutional law — Limitation upon taxation in cities and villages.* — The provisions of sections 22 and 32 of said Police Act, which make it the duty of the Board of Police to prepare and submit to the City Controller, on or before the first of May in each year, an estimate, in detail, of the cost and expense of maintaining the police department, and require the Common Council of the city to raise the same by tax, are restrictive of the power of taxation within the meaning of Sec. 13, Art. 15, of the constitution.

The constitution has not prescribed the character of the restriction which shall be imposed in such cases, and an act which limits the power of taxation as in this act, is as much a restriction as if it confined the power to a certain per centage upon taxable property, or proportioned to the number of inhabitants in the city.

Nor are sections 22 and 32 of said act subject to the objection of not distinctly stating the tax and the object to which it is to be applied, within the meaning of Sec. 14 of Art. 14, of the constitution.

*Constitutional law — violation of fundamental principles in legislation* — Legislation, in violation of sound political principles, but which does not infringe the constitution, cannot be declared void on that ground.

Said Police Act having abolished the office of City Marshal, the Legislature afterwards, at the same session, passed another act amending the charter of the city of Detroit, in respect to the number of jurors to be summoned for the purpose of opening, closing and altering streets, using the language : "to be summoned by the Marshal." *Held*, that said act did not have the effect to continue said office.

*Heard October 12 and 13. Decided October 28.*

The facts are stated in the opinion.

*J. W. Lockwood* for the relator.

1. Section 9 of Article IV. of the State constitution provides that "each house shall choose its own officers,

determine the rules of its proceedings, *and judge of the qualifications, elections and returns of its members.*" The pleas show, upon their face, that the House of Representatives did so judge of the qualifications and election of the members referred to.

This action was judicial, and cannot be called in question — 1 *Kent Com.,* 235.

2. To authorize a Court to declare a statute unconstitutional, it should be able to point out the part of the constitution violated, and the infraction should be clear and free from reasonable doubt. — *Tyler v. People,* 8 *Mich.,* 320; *Trustees of Dart. Coll. v. Woodward,* 4 *Wheat.* 518; *Fletcher v. Peck.,* 6 *Cranch.,* 87.

The Legislature of Michigan possessed entire legislative power within the State subject only to the limitations of the constitution.

The constitution of the United States is a grant of power. That of the State is a limitation of power. — *Pratt v. Allen,* 13 *Com.,* 119.

It cannot be successfully denied that the city of Detroit is a *public* corporation, and that, as such, its charter is subject to legislative control. — 2 *Kent,* 275; *Mayor of Baltimore v. The State,* 15 *Md. Rep.,* 376; *Regents of University of Maryland v. Williams,* 9 *Gill & Johnson,* 365; *State of Maryland v. Baltimore and Ohio Railroad,* 3 *How.,* 535; *People v. Morris,* 13 *Wend.,* 325; *Terrett v. Taylor,* 9 *Cranch.,* 42.

The power to govern belongs to the people of the State, and they will not be presumed to have parted with it except for the common good.

The police power is a sovereign State power, which may be delegated and resumed at pleasure. — 15 *Md. Rep.,* 390; *Stewart v. M. & F. Ins. Co.,* 11 *La.,* 53.

Similar statutes of broader scope have been declared valid by the appellate Courts of last resort in New York

and in Maryland. — *People ex rel Wood v. Draper*, 15 *N. Y. Rep.*, 522; 15 *Md.*, 390.

The Police Act of 1865 shows, upon its face, that it was duly ordered to take *immediate effect*, and it will be presumed to have been so ordered by a constitutional vote, *and so* the journal will show.

3. It is claimed on the part of the respondent that section 36 of the act "to establish a police government for the city of Detroit," approved February 28, 1865, is in conflict with section 25, of article IV. of the State constitution, which is in these words: "No law shall be revised, altered or amended by *reference to its title only*, but the act revised, or section or sections of the act altered or amended, shall be re-enacted and published at length;" for the reason that section 2 of chapter 2 of the revised city charter names a Marshal among the city officers who shall be appointed by the Common Council. — *Laws of Mich.*, 1861, *p.* 181. And section 36 of the Police Act of 1865 abolishes the office of Marshal.

We think this objection is at best merely colorable. The Police Act does not refer to the act revising the charter by its title, or undertake to amend it. But it is an independent act, as its title indicates, "to establish a police government for the city of Detroit." The City Marshal was a police officer, and it was important that the functions of his office and that of the new police should not clash, and that as the new police could as well perform the Marshal's duties for their regular pay, it was desirable to the taxpayers that the city should be saved the salary of the Marshal and his assistant.

Hence section 36 directly abolishes the office of City Marshal, and devolves its duties on the Superintendent of Police.

It is a sound and well settled rule of construction of constitutions as well as statutes, that the reason and object of the provision or enactment must be looked at

in ascertaining its meaning. No authority is needed for this.

Before this constitution was adopted, the universal practice in the Legislature was to amend statutes in important particulars, by referring to the title of the act and section to be amended by its number, and then declare certain words struck out in the middle, or end of the section, and certain others inserted — giving the reader no clue, without turning to the statutes, to the object intended, and this was not only an inconvenience in practice, but used as a fraud in legislation — many members of the Legislature being often deceived as to the object of the act they were voting for.

Now, section 36 of this act is liable to no such objection. It simply abolishes the office of Marshal. It is not in the form of an amendment to any former act, and does not refer to any. It deceives no one, and creates no misunderstanding. Those who voted for it saw, in plain terms, what they were doing. — *Davis v. The State*, 7 *Md.*, 151–159.

4. This clause of the constitution has received a legislative construction for a series of years, and which has been long acquiesced in. — *Laws of* 1857, *p.* 209; 1855, *p.* 31; 1857, *p.* 200; 1855, *p.* 3; 1859, *p.* 483.

*Levi Bishop* for defendant.

1. The Police Act of 1865 was not ordered to take immediate effect by a two-thirds vote of the members elect to the House of Representatives, as required by section 20 of Art. IV. of the constitution; and consequently the Police Board was organized, according to the information filed in the case, long before the act, under which they derive their power, took effect as law.

The question arises upon the soldiers' vote cast, out of the State, in 1864, and the composition of the House of Representatives as produced by it; nine members of

the House not having been elected except by that vote, who were nevertheless admitted to seats and to active membership, against the members really elected by the home vote so called.

The act No. 21, approved February 5, 1864, by which soldiers were authorized to vote out of the State, has been declared by this Court to be unconstitutional, null and void. — *People v. Blodget*, 13 *Mich.*

As a consequence, the two hundred votes cast out of the State, for each of the nine admitted members, were illegal and void, and these men were therefore not elected to the house by virtue of any law, or any legal authority. They were not members of the house; they had no right to seats therein, and the act by which they were admitted was an act which had no authority of law, and which was in itself null, and of no effect.

Consequently this Police Act was not ordered to take immediate effect by sixty-seven votes, being the constitutional two-third of the house, but by only fifty-eight votes out of one hundred of which the house was composed.

If this act, therefore, took effect at all as law, it was not till June 20, 1865, that being ninety days after the close of the session at which it was passed, which was after this Board of Commissioners qualified and organized, or attempted to organize, under the act.

All this seems very clear, unless the clause of Sec, 9, Art. IV., authorizing each house of the Legislature to "judge of the qualifications, elections and returns of its members," vests in the house the power to determine absolutely and finally, all questions in regard to its own membership.

It is submitted that this clause of the constitution vests in each house the right and duty simply to determine; first, whether the returns or certificates of election are in form and substance, in conformity with law;

second, whether a man who presents himself for membership has the requisite qualifications, according to sections 5 and 6, article IV.; third, whether, at a proper election, he has received a majority of legal votes cast by legal voters, *under the law.*

In this they do not act *judicially* upon statute or constitutional law, for the judicial power by Sec. 1, Art. VI., is vested in the Courts or judicial tribunals.

And the *whole* judicial power is thus vested in the courts by this clause of the constitution. — *Chandler v. Nash*, 5 *Mich.*, 409.

The members of the house are to act in subordination to the law, and not adjudge, as a Court of last resort, what that law is. When it is ascertained what the law is, they must obey it.

2. This Court has authority to adjudicate upon acts of the legislative body, and to pronounce them of no effect. The whole includes every part. The legislative body includes every integral part of such body. Each house is an integral part of that body. Therefore the power to adjudicate upon the acts of the whole body, includes the power to adjudicate upon the separate acts of each integral part. — 1 *Kent's Com.*, 504; *Supervisors v. Henan*, 2 *Minn.*, 330; *Wartman v. Philadelphia*, 33 *Pa. St.*, 202.

And this Court should exercise the power in any case and in any form in which the question may be presented. Otherwise there will be no way of enforcing the law of the land, and compelling its observance on the subject. This is the only remedy of the people in those instances of violation of law.

It is well settled that in order to determine the question whether an act has been passed with all the forms required by the constitution, the Court will go behind the act, and look into the engrossed bills, the journals and the votes of the legislative body. — *State v.*

*McBride*, 4 *Miss.*, 303; *DeBow v. People*, 1 *Denio*, 9; *Bank of Buffalo v. Spencer*, 2 *Denio*, 97; *Purdy v. People*, 4 *Hill*, 384; *Spangler v. Jacoby*, 14 *Illinois*, 297; *People v. Supervisors*, 4 *Selden*, 317; *Cahoon v. Dodd*, 14 *Ind.*, 347; *Burr v. Ross*, 19 *Ark.*, 250; *Graves v. Green*, 1 *Doug.*, (*Mich.*,) 351.

So, also, when it becomes necessary to determine whether an act has received a necessary two-thirds vote, in accordance with the constitution. — *Same authorities.*

These constitutional provisions are obligatory. They are not merely directory. — *Supervisors v. Henan*, 2 *Minn.*, 330; 7 *Indiana*, 683; 9 *Indiana*, 383.

We submit, therefore, that this Police Act was not ordered to take immediate effect by a two-thirds vote of the members elected to each house, and that it did not take effect as law, if at all, till June 20, 1865.

3. By Sec. 5 and 6, of Act No. 325, which was passed March 21, 1865, (page 680,) nearly a month after this Police Act was passed, the office of the City Marshal is virtually and by necessary implication continued.

Section 36 abolishes, absolutely, the office of City Marshal, and then the sections 5 and 6 of Act No. 325, refer to that officer, and require him to perform certain duties therein expressed. When two acts of the Legislature are thus found in conflict, the rule of construction is to give effect to that which is last in order of time. — *Federalist* (*Hamilton*) *No.* 78.

4. The meaning of Sec. 20 Art. IV. of the constitution, which prescribes that "no law shall embrace more than one object, which shall be expressed in its title," is well settled; and this Police Act is so multifarious in its provisions and objects, that we can have no doubt of its being within the prohibition. — 1 *Kent*, 519; *Railway v. Potts*, 7 *Ind.*, 681; *State v. Wilson*, 7 *Ind.*, 516; *Igoe v. State*, 14 *Ind.*, 239; *Supervisors v. Heenan*, 2 *Minn.*, 330; *Bassier v. Steele*, 13 *La. An.*, 433; *Menherter v.*

*Price,* 11 *Ind.,* 199; *Fraley, v. State,* 9 *Ind.,* 363; *Gillespie v. State,* 9. *Ind.,* 380.

5. This act violates section 25 of article IV. of the constitution. It amends, alters and repeals many provisions of law, which are designated as "acts and parts of acts inconsistent with the provisions of this act," without re-enacting at length the sections thus amended and altered.

All the mischiefs of confused legislation, which this section 25 was intended to prevent, are upon us again, if this act is allowed to stand. — *Landon v. Applegate,* 5 *Ind.,* 327; *Rogers v. State,* 6 *Ind.,* 31; *Walker v. Miller,* 9 *Ind.,* 100.

6. Again, Section 13 of Art. XV. of the constitution requires the Legislature to *restrict* the powers of taxation in cities. This act, sections 22 and 32, authorizes the Board of Police, by way of estimates, to demand whatever amount of money they please; which estimates and demand being laid before the Common Council, the latter are required to raise it by taxation whether they will or no.

That this power to demand money is unlimited, is shown by the fact that great powers are given generally to this Board, among which (Sec. 25) is the power "to quell riots, suppress insurrections, protect the public property, and preserve the public tranquillity." There may be no limits to their exactions under various pretences.

7. This act also violates the words, "shall distinctly state the tax," in Sec. 14, Art. XIV., of the constitution. Two things are provided for in this section, that is to say, *the tax,* and *the object* of the tax. One clause specifies the object. By the other the tax is to be *stated.* How stated? Stated as we would state anything. Fix the amount. Fix the quantity. As we would state an account. They are words of limitation. The unlimited power of taxation, therefore, given by sections 22 and 32

of this act, is a violation of this clause of the constitution.

It results from this argument that *the title* of this act is not in compliance with Sect. 20, Art. IV. of the constitution. The object of the act is not expressed in the title.

8. This act violates one of the first principles and maxims of free government: *no taxation without representation.* A Board, entirely independent of us — the people of Detroit — in whose appointment we have no voice, over whose conduct we have no control, who receive their appointment at Lansing, may demand of us, in the form of taxation, whatever money their pleasure shall dictate, and we must pay their demands, even to the last farthing we possess. Such a power ought not to exist.

COOLEY J.

By section 36 of "An Act to establish a Police Government for the City of Detroit," approved February 28th, 1865, (*Laws of* 1865, *p.* 99,) it is provided that "the offices of City Marshal and Assistant Marshal of the city of Detroit are hereby abolished, and the duties of said offices shall hereafter be performed by the Superintendent of Police, or by the captains and sergeants of police, under his direction, in accordance with the provisions of this act." But this section was not to become operative until the Superintendent of Police, or Captain of Police, authorized by said act to be appointed, had been sworn into office, nor until certain notices should be given, as provided by section 38 of the same act.

The Commissioners of Police named in the act, having organized and appointed a Superintendent, and he having been sworn into office, the President of the Board of Police caused the notices provided for by section 38 to be given on the sixteenth day of May last, including a notice to the respondent, who then held the office of

Marshal of the city of Detroit under an appointment made by the Common Council, January 13th, 1864, for the term of two years. The respondent disregarded this notice, and treating the act in question as invalid, has assumed to be still in office as City Marshal, and to be rightfully performing the duties of that office to the present time.

To an information in the nature of a *quo warranto*, charging him with unlawfully assuming to discharge the duties of Marshal, the respondent has interposed several pleas which raise the questions: First, whether the act in question is constitutional, and, second, if so, whether it was ever legally ordered to take immediate effect, so that it came into operation prior to the time when the Board of Police organized and gave the notices which have been referred to.

The constitution (Art. IV., Sec. 20,) provides that "no public act shall take effect or be in force until the expiration of ninety days from the end of the session at which the same is passed, unless the Legislature shall otherwise direct by a two-thirds vote of the members elected to each house." The session at which this act was passed terminated on the twenty-third day of March, and laws not ordered to take immediate effect would, therefore, not come into operation until the twenty-first day of June. The legislative records show that this act was ordered to take immediate effect; but the pleas set forth certain facts which, it is claimed, show that in the House of Representatives the two-thirds vote of sixty-seven members included several who had not been elected by a majority of legal votes, but who, it is also claimed by the pleas, were notwithstanding retained in their seats by an adjudication of the House in their favor. And it is insisted that this Court is not bound by the action thus taken, but may go behind the law as approved to ascertain whether, in fact, the constitutional vote necessary

to give it effect before the expiration of the ninety days, was cast by members legally chosen.

As the Court are bound judicially to take notice of what the law is, we have no doubt it is our right as well as our duty to take notice not only of the printed statute books, but also of the journals of the two houses, to enable us to determine whether all the constitutional requisites to the validity of a statute have been complied with. The printed statute is not even *prima facie* valid when other records, of which the Court must equally take notice, show that some constitutional formality is wanting. No plea is necessary to bring to the notice of the Court facts which the Judges must judicially know, and in respect to which no proof could be given. — 1 *Chit. Pl.*, 215; *Coburn v. Dodd*, 14 *Ind.*, 348; *Board of Supervisors v. Heenan*, 2 *Minn.*, 336; *People v. Purdy*, 2 *Hill*, 33; *De Bow v. People*, 1 *Denio* 11; *Commercial Bank of Buffalo v. Sparrow*, 2 *Denio* 101; *People v. River Raisin and Lake Erie Railroad Co.*, 12 *Mich.*, 397.

But although the Courts must take judicial notice of legislative action, so far as it affects the validity of statutes, they have no such power as respects the facts attending the election of the several members, and it remains to be seen whether we can notice those facts even after they have been spread upon the legislative journals, and make them the basis of judgments, the retrospective effect of which would be to unseat members of a body long since adjourned, and to annul its action by declaring the votes of such members illegal and invalid.

It is insisted by respondent's counsel that, although section nine of article four of the constitution authorizes each house to "judge of the qualifications, elections and returns of its members," yet it does not do more than to empower them to determine, *First,* whether

the returns or certificates of election are in form and substance in conformity with the law; *Second*, whether a man who presents himself for membership possesses the requisite qualifications; and, *Third*, whether, at a proper election, he has received a majority of legal votes cast under the law. And in passing upon these questions, it is said they do not act in a judicial capacity to determine what the law is, since the judicial power by section one of article six is vested in certain Courts and officers; but they sit under the law to apply it, as judicially expounded, to the facts before them.

It is a sufficient answer to this argument, that while the constitution has conferred the general judicial power of the State upon the Courts and officers specified, there are certain powers of a judicial nature which, by the same instrument, are expressly conferred upon other bodies or officers: and among them is the power to judge of the qualifications, elections and returns of members of the Legislature. The terms employed clearly show that each house, in deciding, acts in a judicial capacity, and there is no clause in the constitution which empowers this, or any other Court, to review their action. The "general superintending control" which the Supreme Court possesses under section three of article six of the constitution, "over all inferior courts," does not extend to the judicial action of the legislative houses in the cases where it has been deemed necessary to confer judicial powers upon them with a view to enable them to perfect their organization and perform their legislative duties. The houses are not "inferior Courts," in the sense of the constitution, but, as legislative organizations, are vested with certain powers of final decision, for reasons which are clearly imperative.

It may happen, as suggested in the argument, that with each house, not only deciding for itself questions of fact, but also construing for itself the law, we may

sometimes witness the extraordinary spectacle of the two bodies construing and enforcing the law differently, while a third construction is enforced by the Courts upon the public at large. But with this possibility in view, the evils of allowing the Courts a supervisory power over the decisions of the houses upon the admission of members, are so great and so obvious that it is not surprising that the framers of the constitution refrained from conferring the power. The supervision could not ordinarily be exercised during the session of the legislative body, and to correct the decisions afterwards by amending the laws passed, would only be to substitute a great public evil for that which might have been a wrong to an individual member and to the district which elected him, but which could seldom affect the State at large.

It can make no difference that in this case, according to the pleas, the question passed upon by the house was purely a question of law. The question of the legal election of a member is usually a question compounded of law and fact, and the house must necessarily pass upon both. If we have the power to review the decision in one case, we have in all. If we can correct their erroneous construction of a law, we have the same power to correct any erroneous decision upon returns, qualifications or majorities. It is sufficient for us to say that the constitution has not conferred upon us this jurisdiction, and whether the decision made is right or wrong, we shall leave it where it has been left by the fundamental law of the State.

But it is insisted that the whole law is unconstitutional and void, because in violation of section twenty of article four of the constitution, which provides that " no law shall embrace more than one object, which shall be expressed in its title." The history and purpose of this constitutional provision are too well understood to require n y elucidation at our hands. The practice of bringing

together into one bill subjects diverse in their 'nature, and having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits, was one both corruptive of the legislator and dangerous to the State. It was scarcely more so, however, than another practice, also intended to be remedied by this provision, by which, through dextrous management, clauses were inserted in bills of which the titles gave no intimation, and their passage secured through legislative bodies whose members were not generally aware of their intention and effect. There was no . design by this clause · to embarrass legislation by making laws unnecessarily restrictive in their scope and operation, and thus multiplying their number; but the framers of the constitution meant to put an end to legislation of the vicious character referred to, which was little less than · a fraud upon the public, and to require that in every case the proposed measure should stand upon its own merits, and that the Legislature should be fairly satisfied of its design when required to pass upon it. — See *Board of Supervisors v. Heenan,* 2 *Minn.,* 336.

But this purpose is fully accomplished when the law has but one general object, which is fairly indicated by its title. To require that every end and means necessary to the accomplishment of this general object should be provided for by a separate act relating to that alone, would not only be senseless, but would actually render legislation impossible. The police government of a city could not be organized without a distinct act for each specific duty to be devolved upon it, and these could not be passed until a multitude of other statutes had taken the same duties from other officers before performing them. And these several statutes, fragmentary as they must necessarily be, would often fail of the intended

effect, from the inherent difficulty of expressing the legislative will when restricted to such narrow bounds.

The general purpose of this act is "to establish a police government for the city of Detroit." It would be difficult to express it better or more concisely than it is expressed by the title. To accomplish this general object, officers are authorized to be appointed, who shall take upon themselves certain duties before performed by other officers, as well as certain new duties now created, and who are authorized to appoint and govern a force. The act, with great particularity, prescribes how this police government shall be rendered effectual; but this particularity cannot possibly be objectionable so long as it introduces nothing foreign and incongruous, but is confined to the means supposed to be important to the end indicated.

The Courts of some other States have been called upon, from time to time, to pass upon questions similar to this under their own constitutions, and their decisions are not entirely harmonious. None of them, however, have laid down a rule, tested by which, the main provisions of this act could be held unconstitutional, and we have, therefore, no occasion to enter upon a critical examination of them in this opinion.

It is next objected that the law is invalid because in conflict with section twenty-five of article four of the constitution, which provides that "no law shall be revised, altered or amended by reference to its title only; but the act revised, and the section or sections of the act altered or amended, shall be re-enacted and published at length."

The act before us does not assume in terms, to revise, alter or amend any prior act, or section of an act, but, by various transfers of duties it has an amendatory effect by implication, and by its last section it repeals all inconsistent acts. We are unable to see how this conflicts with the provision referred to. If, whenever, a new

THE PEOPLE v. MAHANEY.

statute is passed, it is necessary that all prior statutes, modified by it by implication should be re-enacted and published at length as modified, then a large portion of the whole code of laws of the State would require to be re-published at every session, and parts of it several times over, until, from mere immensity of material, it would be impossible to tell what the law was. If, because an act establishing a police government modifies the powers and duties of sheriffs, constables, water and sewer commissioners, marshals, mayors and justices, and imposes new duties upon the executive and the citizen, it has thereby become necessary to re-enact and re-publish the various laws relating to them all as now modified, we shall find, before the act is completed, that it not only embraces a large portion of the general laws of the State, but also that it has become obnoxious to the other provisions referred to, because embracing a large number of objects, only one of which can be covered by its title.

This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to but not re-published, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent.

A third objection is made to the validity of this act under section thirteen of article fifteen of the constitution, which is as follows: "The Legislature shall provide for the incorporation and organization of cities and villages, and shall restrict their power of taxation, borrowing money, contracting debts, and loaning their credit." Sections twenty-two and thirty-two of the act make it the duty of the Board of Police to prepare and submit to the City Controller, on or before the first day of May in each year, an estimate, in detail, of the cost and expense of maintaining the police department, and the Common Council is required to raise the same by general tax. These sections, it is claimed, are in conflict with the provision referred to, since no limit is fixed by them to the estimates that may be made.

Whether this provision of the constitution can be regarded as mandatory, in a sense that would make all charters of municipal corporations and acts relating thereto which are wanting in this limitation invalid, we do not feel called upon to decide in in this case, since it is clear that a limitation upon taxation is fixed by the act before us. The constitution has not prescribed the character of the restriction which shall be imposed, and from the nature of the case it was impossible to do more than to make it the duty of the Legislature to set some bounds to a power so liable to abuse. A provision which, like the one complained of, limits the power of taxation to the actual expenses as estimated by the governing board, after first limiting the power of the board to incur expense within narrow limits, is as much a *restriction* as if it confined the power to a certain per centage upon taxable property, or to a sum proportioned to the number of inhabitants in the city. Whether the restriction fixed upon would as effectually guard the citizen against abuse as any other which might have been established, was a question for the legislative de-

THE PEOPLE *v.* MAHANEY.

partment of the government, and does not concern us on this inquiry.

It is also urged that sections twenty-two and thirty-two of the act conflict with section fourteen of article fourteen of the constitution, which requires that " every law which imposes, continues or revives a tax, shall distinctly state the tax and the object to which it is to be applied, and it shall not be sufficient to refer to any other law to fix such tax or object." It is sufficient for us to say that these sections, if to be regarded as imposing a tax within the meaning of this provision, do state the tax and the object to which it is to be applied, with precision. It was impossible that the amount should be fixed in advance; and there is nothing in the language employed in this section of the constitution which would warrant us in holding that every law providing for a tax is invalid, unless it limits in amount the sum to be levied.

It is further objected that the act is unconstitutional because it confers upon the Police Board certain judicial powers. This objection raises a question which is not before us upon this record, and which, therefore, we do not intend to decide. The only question which the record presents is, whether, by the organization of the Board under the act, and the giving of the notices provided for by section thirty-eight, the office of the respondent was terminated. Whether any specific power which the act undertakes to confer upon the Board is constitutional or not, can only be tested when the Board assume to exercise it, and the other portions of the act could not be defeated by its invalidity, unless the nature of such unconstitutional power was such as to render it of vital importance to the whole. — See *Smith v. Village of Adrian*, 1 *Mich.*, 495; *Ames v Port Huron Log Driving and Booming Co.*, 6 *Mich.*, 266; and *Parsons v. Russell*, 11 *Mich.*, 113.

Besides the specific objections made to the act as opposed to the provisions of the constitution, the counsel for respondent attacks it on "general principles," and, especially, because violating fundamental principles of our system, that governments exist by the consent of the governed, and that taxation and representation go together. The taxation under the act, it is said, is really in the hands of a Police Board, a body in the choice of which the people of Detroit have no voice. This argument is one which might be pressed upon the legislative department with great force, if it were true in point of fact. But as the people of Detroit are really represented throughout, the difficulty suggested can hardly be regarded as fundamental. They were represented in the Legislature which passed the act, and had the same proportionate voice there with the other municipalities in the State, all of which receive from that body their powers of local government, and such only as its wisdom shall prescribe within the constitutional limit. They were represented in that body when the present Police Board were appointed by it, and the Governor, who is hereafter to fill vacancies, will be chosen by the State at large, including their city. There is nothing in the maxim that taxation and representation go together, which requires that the body paying the tax shall alone be consulted in its assessment, and if there were, we should find it violated at every turn in our system. The State Legislature not only has a control in this respect over inferior municipalities, which it exercises by general laws, but it sometimes finds it necessary to interpose its power in special cases to prevent unjust or burdensome taxation, as well as to compel the performance of a clear duty. The constitution itself, by one of the clauses referred to, requires the Legislature to exercise its control over the taxation of municipal corporations, by restricting it to what that body may regard as proper bounds. And municipal

bodies are frequently compelled most unwillingly to levy taxes for the payment of claims, by the judgments or mandates of Courts, in which their representation is quite as remote as that of the people of Detroit in this Police Board.

It cannot, therefore, be said that the maxims referred to have been entirely disregarded by the Legislature in the passage of this act. But as counsel does not claim that, in so far as they have been departed from, the constitution has been violated, we cannot, with propriety,. be asked to declare the act void on any such general objection. An unbroken series of decisions in this State has settled the rule of law, that before we can declare an act of the Legislature invalid, its provisions must be found to conflict with the constitution. — *Scott v. Smart's Executors*, 1 *Mich.*, 295; *People v. Gallagher*, 4 *Mich.*, 244; *Sears v. Cottrell*, 5 *Mich.*, 251; *Tyler v. People*, 8 *Mich.*, 320; *People v. Blodgett*, 13 *Mich.*

We have only one other objection to notice, and that does not go to the validity of the act, but only to its effect upon the office of City Marshal. On the twenty-first of March, 1865, twenty-one days after the passage of the one in question, another act was passed and ordered to take immediate effect, amending the sections in the charter of Detroit in regard to opening, altering and closing streets. — *Laws of* 1865, *p.* 680. The only change made by this law was a reduction of the number of jurors; to be summoned by the Marshal, in the proceedings for opening streets and so forth, from twenty-four to twelve; but as the law was passed and took effect after the police law, it is claimed that it necessarily had the effect to modify the other to the extent of continuing the office of Marshal. When the second act was passed, the Police Board had not been organized, and the Marshal was not only an existing officer, but it was wholly uncertain when his office would be terminated. No intention appears in this.

act to change the police law, or to do anything beyònd reducing the number of jurors to be summoned, and, but for the provision in the constitution requiring an amended section to be re-published as amended, the change might have been accomplished by a simple substitution of the word *twelve* for *twenty-four*. The effect of the amendment is no different now from what it would have been if made in that form. The duty to summon the jurors remained as before, and so continued until by the subsequent organization of the Police Board, and by the taking of the other preliminary steps, the office of City Marshal ceased to exist, and this duty, with others, was transferred to an officer under the police law.

For the reasons given, we are satified that the act in controversy is constitutional; that it was constitutionally ordered to take immediate effect, and that the respondent ceased to be City Marshal on the 16th day of May last. Judgment must be entered accordingly.

The other Justices concurred.