## LONG *v.* THE CITY OF NEW LONDON.

*(Circuit Court, E. D. Wisconsin.* December 23, 1880.)

1. MUNICIPAL BONDS—ACT AUTHORIZING ISSUE—SUBSEQUENT INCOR-
   .PORATION OF MUNICIPALITY—PRIVATE AND LOCAL LAWS OF WIS-
   CONSIN FOR 1867, *c.* 93, § 1.

   An act of the legislature of the state of Wisconsin authorized any incorporated city or village, in any county through any portion of which any part of the Green Bay & Lake Pepin Railway should run, to issue and deliver bonds in accordance with the terms of the act. *Held*, that such act was applicable to any city or village which had been subsequently incorporated, and which had issued its bonds in accordance with the terms of the statute.

2. SAME—CHARTER—REPEAL.

   *Held, further*, that the legislative intent must be clearly manifested, by the terms of its charter, in order to preclude any city or village from the operation of such act.

3. SAME—CONSTITUTIONAL RESTRICTION OF POWER OF MUNICIPALITY—
   CONSTITUTION OF WISCONSIN, ART. 11, § 3.

   Such act further provided that any such city or village might issue bonds to said railway company " for such sum or sums, at such rate of interest, transferable by general or special indorsement, or by de-livery, and in such manner as might be agreed upon by and between the directors of said railway company and the proper officers of such * * * incorporated city or village." *Held*, that this provision satisfied the requirement of the constitution of the state in relation to the restriction of the power of municipal corporations to contract debts and loan their credit.—[ED.

Demurrer to Complaint.

*Finches, Lynde & Miller,* for plaintiff.

*Mr. Patchin* and *C. W. Felker,* for defendant.

DYER, D. J. This is a suit upon municipal bonds, issued by the village of New London, March 11, 1872, in aid of the Green Bay & Lake Pepin Railway, and upon which no ques-

tion is made as to the liability of the defendant city, if the bonds were valid obligations against the village. The amount of the bonds and coupons in suit is about $6,500, besides interest. The complaint is demurred to, and two grounds of demurrer are urged—*First*, that the act of the legislature of this state under which the bonds were issued did not apply to the village of New London, nor authorize that municipality to issue bonds in aid of a railroad; *second*, that the act under which the bonds were issued is unconstitutional and void, and hence that it conferred no power to issue the bonds.

The complaint is in the usual form, except that in each count the bond counted on is set out *in hæc verba*. No question is made that the railroad, to aid in the construction of which the bonds were issued, was duly located to run through the county in which the village (now city) of New London is situated, and has been so constructed. The act of the legislature under which the bonds were issued is chapter 93 of Private and Local Laws of Wisconsin for 1867, and to distinguish it from other statutes important to notice it may be designated as the "Enabling Act." No objection is made to the bonds in respect to their terms, form, and mode of execution, nor is it claimed that there was any irregularity in the proceedings of the municipality preliminary to the issuance of the bonds. Section one of the enabling act provides that "it shall be lawful for any county through any portion of which any part of the Green Bay & Lake Pepin Railway shall run, or any town or incorporated city or village in such county, to issue and deliver to said company its bonds, payable to such person or persons, trustees, or corporation, or to said company, at such time, for such sum or sums, at such rate of interest, transferable by general or special indorsement, or by delivery, and in such manner, as may be agreed upon by and between the directors of said railway company and the proper officers of such county, town, incorporated city, or village, as hereinafter provided, and to receive in exchange for such bonds the stock or bonds of said railway company in such manner as shall be agreed upon by and between the directors of said railway company and the proper officers of such county, town,

incorporated city, or village, as hereinafter provided." The act further provides for a proposition from the railway company for an exchange of stock for bonds as the basis of proceedings preliminary to the issuance of bonds, and for submission of the proposition to the voters of the city, town, or village for acceptance or rejection, and also prescribes the manner in which bonds may be executed and issued.

By chapter 504 of Private and Local Laws of Wisconsin for 1868, the village of New London was incorporated. This act of incorporation was subsequently amended, the amendatory act being chapter 362 of Private and Local Laws of 1869; and again in 1870 an act was passed reducing the act incorporating the village and the amendatory act of 1869 into one act, and amending the same. See Private and Local Laws of 1870, *c.* 485. In neither of these acts under which the village of New London came into existence is there any provision giving to the municipality authority to issue the bonds in question.

By chapter 162 of Private and Local Laws of 1877, the city of New London was incorporated, and embraced within its boundaries, as prescribed in the act, the same district of country that was included within the limits of the village, and in this act there appears to be no authority given to the city to issue bonds in aid of the Green Bay & Lake Pepin Railway. It should be added, as part of the history of legislation touching the bonds in question, that in 1878 the legislature passed an act to authorize the common council of the city of New London to borrow money from the commissioners of school and university lands of the state, upon certain terms prescribed in the act, by means of which loan the city might be enabled to compromise the indebtedness represented by the bonds previously issued by the village; but the fifth section of the act provided that nothing therein contained should be construed as a recognition of the validity of the instruments issued as bonds of the village of New London. The act referred to is chapter 118 of Laws of Wisconsin for 1878; and an act amendatory thereof is to be found in chapter 340 of the General Laws of the state for the same year.

Thus it will be seen that the act under which the bonds were issued was passed in 1867, and before either the village or city of New London came into existence; that the village was incorporated in 1868; that the bonds were issued in 1872; and that the city was incorporated in 1877. And upon these facts and this state of legislation, in connection with certain provisions contained in the charters of the village and city, it is contended that the village had no legislative authority to issue the bonds.

It may first be observed that the voters and the authorities of the village, by their action under the enabling act of 1867, construed and treated it as authorizing them to issue the bonds in suit, and as applicable to the village, although it did not exist as a municipality when the act was passed. And we are of the opinion that the act is so far prospective, in its language and intent, that under it not only could a city or village then existing issue its bonds for the purposes specified, but any city or village thereafter incorporated, in any county through which the railway should run, might, if it saw fit, avail itself of the right and authority conferred by the act to incur indebtedness in aid of such railway. It is true, the act does not in terms specify cities and villages then and thereafter existing, but its language and import are nevertheless very general and comprehensive. It provides that it shall be lawful for *any* incorporated city or village, in any county through any portion of which any part of the Green Bay & Lake Pepin Railway *shall run*, to issue and deliver bonds in accordance with the terms of the act. It would not, we think, be consonant with rules of sound construction to limit the application of this language to municipalities existing at the time of the passage of the act. And especially does it seem unreasonable to give the benefit of such a construction to a municipality which has acted under the statute, and caused its obligations to be issued and to pass into the hands of innocent third parties, thereby adopting the statute as its letter of authority so to act.

But it is claimed that certain provisions in the charters of the village and city of New London are so repugnant to the

general provisions of the act of 1867 as to operate as a repeal of those provisions so far as otherwise they might be applicable to those municipalities or either of them.   And attention is called to a section which appears in the various acts incorporating the village and city, which provides that "no general law of this state, contravening the provisions of this act, shall be considered as repealing, amending, or modifying the same, unless such purpose be expressly set forth in such law." But this clearly has reference to a general law that might be passed in the future, and not to one previously passed and then in force.

Again, our attention has been directed to section 2 of chapter 7 of the amended charter of the village of New London, (chapter 485, Pr. and Local Laws Wis. 1870,) which forbids the village to borrow money, and provides that it shall not be liable to pay money borrowed, and shall not incur any debt or liability in any year greater than the amount of tax allowed by the act to be raised in the year in which such debt or liability should be incurred.   This, it is true, constitutes a limitation upon the right of the village to incur indebtedness, but we do not think the debt or liability here spoken of was intended to embrace the case of bonds that might thereafter be issued in exchange for stock and in aid of a railway under the act of 1867.   Certainly the issuance of such bonds would not necessarily be a borrowing of money, and even the power to borrow money, as appears by the terms of this section 2, is only restricted where the right to borrow is not specially authorized by law.   To preclude the application of the enabling act of 1867 to the village of New London, by any provisions in the charter of the village, the legislative intent should be clear.   Unless manifested in such manner as to make the charter provisions clearly operate as a repeal of the act of 1867, the latter act must stand as a law under which the village might act.   We are not prepared to hold that such repeal was effected by the charter of 1870.   The final repealing clause in that act, (section 15 of chapter 11 of charter,) which is that "all acts or parts of acts conflicting with this act are hereby repealed, so far as they conflict with the provisions of

this act," ought not, we think, to be held as intended to repeal the act of 1867. That section repealed, and was undoubtdoubtedly intended to repeal, only the original act of 1868, incorporating the village of New London, and the amendatory act of 1869.

Comment on the provisions of the charter of the city of New London, to which our attention was called on the argument, is unnecessary, since the ground is covered by the observations just made upon similar provisions in the charter of the village; and, in accordance with the views thus expressed, we must hold the first point taken in support of the demurrer untenable.

But it was argued with much earnestness that the village of New London had no authority to issue the bonds, because, as it is claimed, the enabling act of 1867 contained no such restriction upon the power of the village to loan its credit as is required by section 3 of art. 11 of the constitution of Wisconsin; and that for the want of such restriction the act must be held unconstitutional and void. The section of the constitution in question is as follows: "It shall be the duty of the legislature, and they are hereby empowered, to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in assessments and taxation, and in contracting debts by such municipal corporations."

Now it is contended that the enabling act of 1867 contains no such restriction as this constitutional provision requires, and hence that the act does not conform to the constitutional requirement, and is void. We cannot adopt this view. The constitution does not specify any particular mode in which the legislature shall restrict the power of municipal corporations to contract debts or loan their credit. It is, therefore, immaterial how it is done, provided the restriction be imposed, and we think the legislature sufficiently performed its duty in that regard in the act of 1867, to make that act a valid law; for it was therein provided that cities and villages might issue bonds to a particular railway company,

which was named, "for *such sum, or sums, at such rate of interest,* transferable by general or special indorsement, or by delivery, and in such manner *as may be agreed upon* by and between the directors of said railway company *and the proper officers of such * * * incorporated city or village.*" We are of the opinion that when it was thus provided that the issue of bonds should be in such sum or sums as should be agreed on between the company and the officers of the village, and when the object, to promote which bonds were authorized to be issued, was specified, and the whole founded on a prior vote by the people, the constitutional requirement was satisfied. It must be presumed that the officers of the municipality would be competent judges of the amount of bonded indebtedness which the town or village ought to incur. And when the amount is by the act made subject to the concurrence and control of the representatives of the municipality, such a restriction is imposed as constitutes a compliance with the constitutional provision. It may not be a restriction that would as effectually prevent abuse in contracting debts as would a provision expressly fixing a sum that should not be exceeded, but the character of the restriction is a question not for the courts but for the legislature.

Cases bearing on the question are *Maloy* v. *City of Marietta,* 11 Ohio St. 636, and *The People* v. *Mahaney,* 13 Mich. 481. The constitutions of Ohio and Michigan contain clauses similar to that in the constitution of this state, and now under consideration. In the case first cited the court say: "The constitution clearly imposes a duty upon the legislature, but does not direct when or how it shall be exercised. Speaking of this provision, and the duty thereby enjoined, Judge Ranney, in *Hill* v. *Higdon,* 5 Ohio St. 248, says: 'A failure to performt his duty may be of very serious import, but lays no foundation for judicial correction.' Be this as it may, the section, while it imposes the duty, leaves to the legislature the power to determine the *mode* and *manner* of the restriction to be imposed." This was a case involving the validity of a statute which authorized an assessment of the cost of improving a street upon abutting lots; and it was held that a restriction

which provided that no improvement of a street, the cost of which was to be assessed upon the owners, should be directed *without the concurrence of two-thirds of the members of the city council*, unless two-thirds of the owners to be charged should petition in writing therefor, satisfied the constitutional requirement. The court further say: "This may be said to be a very imperfect protection; * * * but it is calculated and designed, by the unanimity or the publicity it requires, to prevent any flagrant abuses of the power. Such is plainly its object, and we know of no rights conferred upon courts thus to interfere with the exercise of a legislative discretion which the constitution has delegated to the law-making power."

In the *People* v. *Mahaney, supra*, the court, speaking of the constitutional provision, say that whether it "can be regarded as mandatory in a sense that would make all charters of municipal corporations * * * which are wanting in this limitation invalid, we do not feel called upon to decide in this case, since it is clear that a limitation upon taxation is fixed by the act before us. The constitution has not prescribed the character of the restriction which shall be imposed, and from the nature of the case it was impossible to do more than to make it the duty of the legislature to set some bounds to a power so liable to abuse. A provision which, like the one complained of, limits the power of taxation to the actual expenses, *as estimated by the governing board*, after first limiting the power of the board to incur expense within narrow limits, is as much a *restriction* as if it confined the power to a certain percentage upon taxable property, or to a sum proportioned to the number of inhabitants in the city. Whether the restriction fixed upon would as effectually guard the citizen against abuse as any other which might have been established, was a question for the legislative department of the government, and does not concern us in this inquiry."

The reasoning of the courts in the two cases cited we regard as peculiarly applicable to the question involved in the case at bar; and we adopt it as sustaining our conclusions as to the validity of the statute under consideration.

We are not unmindful of the decision of the supreme court of this state in *Foster* v. *Kenosha,* 12 Wis. 688, and in *Fisk* v. *Kenosha,* 26 Wis. 23. In those cases it was held that the legislature cannot confer upon a municipal corporation an *unlimited* power to levy taxes and raise money, aside from and above what may be necessary and proper for legitimate purposes, the grant of such unlimited power being inconsistent with section 3 of article 11 of the constitution; and it may be difficult to reconcile some of the reasoning of the court in these cases with that of the courts in the Ohio and Michigan cases cited. But it is to be remarked of *Foster* v. *Kenosha* and *Fisk* v. *The Same* that the statute there under consideration authorized the unlimited levy of taxes for any purpose which might "be considered essential to promote or secure the common interest of the city;" and this feature of the statute is much dwelt upon in the opinion of the court in *Foster* v. *Kenosha.* The grant of power to levy taxes was absolutely unlimited, both as to amount and object, and the court held that the legislature could not confer upon a municipal corporation "such unrestrained ability to contract corporate indebtedness and mortgage the real estate of the city."

We are not prepared to hold that there is such similarity between the statute passed upon in *Foster* v. *Kenosha* and *Fisk* v. *Kenosha* and that under consideration in the case at bar, as to make those cases controlling upon the question here involved. The enabling act of 1867 was, in our opinion, a valid enactment, and conferred upon the village of New London authority and right to issue the bonds in suit; and the demurrer to the complaint will, therefore, be overruled.

DRUMMOND, C. J., concurred.