*175 The opinion of the court was delivered by
Poché, J.
This controversy involves a question of the validity or of the proper rank of certain warrants drawn by the Auditor on the Treasurer under the provisions of Act No. 51 of 1888, entitled “An Act making appropriations to pay deficiencies due by the State for the years 1885, 1886 and 188V.”
The contention on the part of plaintiff, who is joined by three intervenors, is that, as holders of warrants drawn against and payable out of the general fund of the general appropriation act of 1886, their prospect of being paid is affected by the plan adopted by the State Treasurer who places the warrants drawn under Act 51 of 1888-on the same footing with theirs.
They allege that the Treasurer thus erroneously construes the-meaning and effect of said Act of 1888, which does not purport such a parity; and they further charge that the act in question is unconstitutional, hence they pray that the warrants issued thereunder be declared null and void.
The defence is practically a general denial.
The judgment below is in favor of plaintiff and of intervenors, sustaining the injunction which they had prayed for, to the extent that their warrants be given preference over the warrants issued underAct 51 of 1888.
The Treasurer appeals, and the plaintiff and intervenors pray for an amendment with the view to a decree pronouncing the unconstitutionality of said Act of 1888.
By the terms of the general appropriation act of 1886, the Treasurer is required to pay warrants drawn against the general fund in the following order:
1. “Warrants issued for salaries of officers, employes and office expenses of the various departments of the government, including assessors.
2. “Warrants issued for Agricultural and Mechanical College, university for education of persons of color and State printing.
3. “Warrants issued for miscellaneous purposes.”
It is in proof that all warrants belonging to the first two classes as hereinabove enumerated have been paid for in full, and that the warrants held by plaintiff and by the intervenors, as well as those-, which have been drawn under the provisions of Act 51 of 1888, belong to the third class.
*176 It also appears from the records that the revenues to be credited to the general fund of 1887 will not be sufficient to pay more than the warrants issued under the general appropriation act of 1886, which are yet outstanding, and hence it appears that ranking with them the warrants issued under Act 61 of 1888 would injuriously affect them and would have a tendency to depreciate their value.
That is the source of the cause of action which plaintiff and intervenors set forth in the premises.
Among other grounds of unconstitutionality, they charge that Act 51 of 1888 is in violation of Art. 53 of the Constitution, which reads:
“The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the Government, interest on the public debt, public schools and public charities, and such bill shall be so itemized as to show for what account each and every appropriation shall be made. All other appropriations shall be made by separate bills, each embracing but one object.”
The contention urged by appellees is that the act in question, which is not a general appropriation act, contains several objects embraced in one and the same bill, in direct violation of the last clause of the article of the Constitution hereinabove transcribed.
As indicated by its title, the act was intended to make appropriations to pay deficiencies due by the State for the years 1885, 1886 and 1887.
It then proceeds to appropriate $11,057.28 for four different and distinct purposes, as follows:
1. To pay the salaries of certain registrars of voters for services rendered in connection with a congressional election held in November, 1887, the sum of $2,600 out of the revenues of 1887.
2. To pay for transporting State troops in the field during the labor strikes in November, 1887, the sum of $7,657.28 out of the revenues of 1887.
3. To pay expenses of a special election in June of 1885, $600 out of the revenues of 1885.
4. To pay expenses of a special election held in August, 1885, $200 out of the revenues of 1885.
A mere comparison of the constitutional requirement, with the terms and purposes of the act under discussion, is sufficient to demonstrate the fatal constitutional defect of the statute.
It is too plain for argument that the act is not, that under the very *177 nature of things it could not, and that it never was intended to be, a general appropriation act. Hence, it can not be shielded under the first clause of Art. 53, which has reference exclusively to a general appropriation bill, which, under its very nature, must embrace a large number and a great variety of objects and items, as numerous as the many and various purposes of government requiring expenditures of money are themselves.
But in so far as all other appropriations are concerned, the framers of the Constitution have deemed it wise to provide and to require that they be made by separate bills, each embracing but one object.
By another article (29) the Constitution applies the same rule to all laws enacted by the General Assembly.
The reason of the rule is found in long experience in legislation, and has for objects “to obviate confusion in legislation by mingling in the same act entirely distinct and heterogeneous provisions (Walker vs. Caldwell, 4 An. 298) ; to prevent hodge podge or log rolling legislation, bringing together in one bill diverse subjects with a view to combine in the support of the entire bill the advocates of each particular provision (People vs. Mahoney, 13 Mich. 494) ; to prevent surprise or fraud upon the Legislature or the people by smuggling provisions into bills of which the title gave no intimation, and which might, therefore, be carelessly and unintentionally adopted.” State vs. Henderson, 32 An. 780.
Experience has demonstrated that the rule is a wise one and that it has prevented much mischief in general or ordinary legislation; and it must commend itself to greater favor when the object of the act is to disburse the revenues of the State, the people’s money.
Should it be conceded that Act 51 was intended to be a supplement to or an amendment of a general appropriation act, it would yet be unconstitutional as a legislative attempt to amend two distinct appropriation bills by one act, because Act 51 proposes to appropriate revenues of 1885, covered by the general appropriation bill of 1884, and it also disposes of revenues of 1887, covered by Act 47 of 1886. The act would thus embrace two objects, neither of which is expressed in the title, and would then present a double violation of Article 29 of the Constitution, which is also invoked by appellees in their pleadings.
As the purposes contemplated in the act under consideration ap *178 pear to be reasonable and equitable, it is perhaps to be regretted that the law maker in drawing this bill did not comply with the constitutional requirement, as he did in several other appropriations made at the same session of the General Assembly, embracing objects apparently not more meritorious than each of the four separate and distinct purposes which were carelessly blended together in Act 51.
But our plain and paramount duty is to obey and to enforce the Constitution, in the face of which all other considerations must yield, .and carry no weight.
The foregoing reasons lead us to conclude, without making any comments as to the correctness of the views of the learned judge of the District Court, which however appear very doubtful, that appellees are entitled to a decree annulling the entire act and cancel-ling the warrants issued thereunder.
It is therefore ordered that the judgment of the lower court be amended by declaring that Act No. 51 of 1888 is unconstitutional, and that all warrants issued under its authority are null and void; and that as thus amended said judgment be affirmed at the costs of .appellant in both courts.