C. W. SKINNER *v.* WILLIAM HETTRICK and JOHN HETTRICK.

Albemarle Sound being a navigable water, is not subject to entry; but every citizen of the State has the liberty and privilege of fishing therein.

While the owner of a beach has the right of drawing his seine to that beach, in exclusion of others, yet he cannot acquire the sole right of fishing in a certain portion of the waters of the Sound, independently of all others.

To constitute a several fishery, there must be a right of soil; which no person has in Albemarle Sound. At common law, there could not be a several fishery in a navigable stream.

The *regulation* of the right of fishing in navigable streams is a proper subject of legislation, and has been treated as such in this State, by acts establishing "lay days" and the like.

(The cases of *Collins* v. *Benbury,* 3 Ired. 277; *Same* v. *Same,* 5 Ired. 118; *Ward* v. *Willis,* 6 Jones, 183, cited and approved.)

CIVIL ACTION and application for an Injunction, heard before *Eure, J.,* at the Fall Term, 1874, of CHOWAN Superior Court.

The following are the material facts, as transmitted by his Honor to this Court, as a statement of the case:

The plaintiff is the owner of a ten year lease of a fishery on Albemarle Sound, known as Long Beach Fishery, and began to repair his beach, windlasses, &c., sometime in the summer

of 1874. He fishes a seine about 2200 yards long, and lays it out about a mile from the shore, in the direction ————, up and down the sound.

In repairing the windlasses, the plaintiff placed them on his own land in the same position formerly occupied by them; and in the management of his fishing operations, the same custom prevails now that has existed since the establishment of the fishery many years since.

When the wind and tides prevail from the East, the seine is shot down the sound and across a straight line from the line of plaintiff's land, so as to counteract the wind and tides and to allow for the drifting of the seine up the sound; and when the wind and tides set from the West, *e converso.*

The defendants, in 1873, purchased the Snow Hill place, which adjoins the Long Beach Fishery on the West; and in February began to drive a line of stakes in the sound opposite their land, and running perpendicular to and more than a mile from their beach. The stakes were about thirty feet long and from six to eight inches in diameter—driven solidly in the sound with a pile driver. To them were attached what are known as "pond nets" or "Dutch nets." These stakes were within half a mile, (about six hundred yards,) of the extreme Western windlass of the plaintiff, and were a permanent obstruction in the sound. His (the plaintiff's) seine on one occasion drifted against and became entangled with the stakes and was badly torn.

At the time the defendants were driving the stakes, the plaintiff urged them not to do so, stating the damages which would result to his seine, and offered of himself to remove the stakes already driven, and to assist the defendants to drive their line of stakes more to the Westward, opposite their own land and beyond the reach of the plaintiff's seine or that of any other person. To this one of the defendants replied that " he had a right to fish anywhere in the sound; if his " (the plaintiff's seine runs into my net, it may tear the seine, but will not hurt my net." The defendants afterwards drove

down a similar row of stakes to the East and near to their nets, as fenders, and to which the nets were attached; some of which stakes were in twenty foot water.

It was stated by the witness, Joshua Roberts, who owns and fishes the fishery to the East of that of the plaintiff's, that his (the plaintiff's) fishery was fished this year in the usual manner; and that the seine of that fishery, as of all others on the sound, would sometimes be drifted by wind and tide from one-half to three-quarters of a mile up or down the sound, according to the prevalence of the wind or current; that there was plenty of fishing ground for defendants farther to the West of plaintiff's, and opposite the defendants' shore, where the defendants could set their nets without any interference with plaintiff's or any other seine.

It was also in evidence that the defendant, John Hettrick, came, on the 14th of March, to the witness's fishery and stated that he, Hettrick, had just seen the plaintiff, and had agreed to remove his nets further from the plaintiff's; that he had put them there supposing the plaintiff to be unfriendly to him and desired to prevent his fishing on the North side of the sound; but being now satisfied that he was misinformed, and that it damaged the plaintiff, he intended to remove the stakes; but they were not removed until taken away by the Sheriff, since which time the defendants had re-set them further to the Westward of the plaintiff.

It was further stated that after the act of the Legislature was passed, (making it a misdemeanor to set a Dutch or pond net within one-half mile to the Eastward or Westward of the outside windlass of any fishery, &c.,) the defendants were duly notified of its passage and of its provisions by the sheriff, and that the plaintiff offered to remove their net stakes; that the defendants again refused to remove them or cause them to be removed, and threatened to drive another row of stakes directly in front of plaintiff's shelter on his beach, or at his centre stake. This was anterior to the passage of the act before referred to. On the 31st of March and 1st and 2d days of April,

the Sheriff of Chowan, in obedience to the order of the Court removed at the expense of the plaintiff all the stakes and nets of the defendants, which were within one-half mile of the outer Western windlass of the plaintiff's fishing beach. As long as the stakes and nets were within one-half mile, there was constant danger to plaintiff's seine, and he was prevented from a free use of the sound for fishing, in the event of strong tides or winds.

The plaintiff's outlay in fishing operations was from $15,000 to $20,000 *per annum*, and the receipts generally from $20,000 to $30,000 annually, at that and other similar fisheries on the sound.

The defendants claim that their property in land and fishing material is worth $5,000. For the defendants it was also stated that since the removal of their stakes and nets, the seine of the plaintiff has been torn, as it was before removal. To this plaintiff replied, and proved that the seine became entangled in a lost anchor in the sound and was thus damaged.

On the hearing the defendant moved to dissolve the injunction, which was refused, and the same continued until the hearing.

From the foregoing order the defendants appealed.

*Smith & Strong,* for appellants.
*Mullen* and *Moore* and *Gilliam & Pruden,* contra.

SETTLE, J. The plaintiff having commenced an action against the defendant to recover damages for obstructing his right of fishing in Albemarle Sound, obtained an order from the Court restraining the defendant from setting Dutch or pond nets in the sound except upon such conditions as are imposed by the act of 1874–'75, chap. 115. A motion to dissolve the restraining order was refused, and the injunction continued to the hearing of the cause, from which order the defendants appealed to this Court.

The bare statement of a few general principles will be suf-
ficient to decide the question involved.

1. Albemarle Sound, being a navigable water, is not subject
to entry, but every citizen of the State has the liberty and
privilege of fishing therein.

2. While the owner of a beach has the right of drawing his
seine to his beach, in exclusion of others, yet he cannot acquire
the sole right of fishing, independently of all others, in a cer-
tain portion of the waters of the sound.

3. To constitute a several fishery there must be a right of
soil, which no person has in Albemarle Sound.

4. At common law, there could not be a several fishery in a
navigable stream.

5. The *regulation* of the right of fishing in navigable
streams is a proper subject of legislation, and has been treated
as such in this State, by acts establishing lay days, and the like.

Apply these principles to the case at bar.   The defendant,
by driving stakes for a mile and a quarter into the sound, made
an exclusive appropriation to his own use of that portion of
the sound embraced within his pond, and materially inter-
fered with the common right of fishing, as it had been enjoyed
by all those operating the Long Beach fishery for many years.

The winds and tides had always, during the fishing season,
drifted the seine of the plaintiff over a portion of the ground
which was enclosed within the defendant's pond.   And while
the right of the defendant to fish over the same, or any other
ground, is fully recognized, yet he had no exclusive and several
right of fishing in that or any other portion of the sound.

Shults on Aquatic Rights, 24 Law Lib., p. 100, says:
"Whatever opinions may be formed or whatever arguments
may be advanced, in regard to a fishery in public streams being
a royal franchise derivable from the crown, and claiming exclu-
sively by grant charter or prescription, they must, we conceive,
yield to the plain and incontrovertible fact adverted to by our
earliest, as well as our modern writers, that every subject of
common right may fish in the sea and in navigable rivers, un-

less restrained or prohibited by the local usage of any particular place." And he adds " that such a private appropriation of fishery authorized by grant in a navigable river being incompatible with the public right, cannot exist in law." This is broad ground, which we need not occupy for the purposes of this case.

We are of opinion that the plaintiff is entitled to have the defendant enjoined from appropriating, exclusively to his own use, any portion of the waters of the sound, without calling to his aid the act of 1874–'75, which has already been referred to.

We will remark, however, that we think the Legislature had the right to pass the Act under its power to *regulate* the right of fishing; and further, that the objection to the act, as being *ex post facto*, can avail nothing in this action, for while it may be so in so far as it makes the past act of setting and fishing any Dutch or pond net a misdemeanor, yet for the *main* purposes of the act, to-wit, the regulation of fishing in Albemarle Sound, it is not open to the criticism made by the defendants. *Collins* v. *Benbury*, 3 Ired. 277 ; *Collins* v. *Benbury*, 5 Ired. 118 ; *Ward* v. *Willis*, 6 Jones 183.

The judgment of the Superior Court is affirmed.

Let this be certified, &c.

PER CURIAM.                    Judgment affirmed.