## HETTRICK & BROTHER v. H. H. PAGE.

*Injunction—Fisheries in Albemarle Sound.*

1. In injunction proceedings where the allegations are not controverted in the answer, it is not error in the judge to refuse to place the cause on the docket for a jury trial.

2. A restraining order will not be granted when adequate compensation can be had in a proper action for the alleged injury.

3. The act of 1875, ch. 115, (and ch. 183) regulates the exercise of a common right of fishing in the waters of Albemarle Sound and imposes limitations upon the pod-net mode in favoring seine-fisheries on its shore. One engaged in the latter, has the right to remove stakes put up to operate the former, when his seine-fishery is interfered with by them.

(Remarks of Smith, C. J., upon the right to remove obstructions from a highway without incurring personal liability )

(*Jones* v. *Boyd,* 80 N. C., 258; *Collins* v. *Benbury,* 3 Ired. 279 and 5 Ired., 118; *Skinner* v. *Hettrick,* 73 N. C. 53, cited and approved.)

APPLICATION for an Injunction heard at Chambers in Elizabeth City on the 1st day of November, 1879, before *Gudger, J.*

Upon the facts set out in the opinion of this court, His Honor refused the plaintiffs' motion for an injunction and dissolved the restraining order theretofore granted, and the plaintiffs appealed.

*Messrs. W. A. Moore* and *A. M. Moore,* for plaintiffs:

This is not the case of an ordinary injunction in aid of and secondary to another equity. It is to prevent irreparable injury. *Purcell* v. *Daniel,* 8 Ired. Eq., 9. The relief here sought is to stay waste and destructive trespass, 6 Jones Eq., 83. See also 4 Jones Eq., 29; *Eborn* v. *Waldo,* 6 Jones Eq., 112.

*Messrs. Pruden & Shaw* and *Gilliam & Gatling*, for defendant:

Any exclusive appropriation of these waters for the purpose of fishing is unlawful, and is a nuisance which may be abated by any one interested. *Collins* v. *Benbury*, 3 Ired., 279 and 5 Ired., 118; *Skinner* v. *Hettrick*, 73 N. C., 53. There is no repugnancy between the act of 1875 and the former law—both had the same general . purpose, the protection of the common right. Upon the nuisance created by plaintiffs driving down stakes, see *State* v. *Parrott*, 71 N. C., 311; *State* v. *Dibble*, 4 Jones, 107.

SMITH, C. J. This action was commenced on the 12th day of September, 1879, and its object is to restrain the defendant by injunction from removing . or interfering with certain stakes put up in the waters of Albemarle sound upon which the plaintiffs propose to hang their pod and pound-nets to catch fish. The stakes commencing opposite the plaintiffs' shore and extending about one thousand yards out into the water, are about three by six inches in size, and separated from each other by short intervals, in a line, are driven some four or more feet into the bottom or bed of the sound, and the net is stretched out and fastened to them, with several pounds or enclosures into which the fish, arrested in their migratory movement up the waters, and seeking an outlet, enter; and being unable to find their way out are taken up with dip-nets. The defendant has purchased the shore on which an old but long disused seine fishery was operated and purposes to re-open it. Preparatory to commencing his fishing operations, the defendant finds it necessary to clear out the obstructions, among which are the plaintiffs' stakes, in the adjacent waters through which his seine must be drawn, and threatens and has directed his servants to take up the stakes and carry them away from his seine-ground. The stakes were placed in

their present position several years ago by the plaintiffs, and have since remained and been used to stretch their nets upon, and are necessary for that purpose. The defendant has only recently become the owner of the land, of which the beach forms a part, on which the fishery is to be operated. The aim and scope of the suit is to forbid and prevent the removal of the stakes, or any interruption of the plaintiffs in their use, and the aid of the court is asked upon the ground that the consequence of the threatened act, if done, would be an irreparable mischief to them.

These are substantially the facts presented in the complaint, answer and replication, so far as deemed material to the proper understanding of the action of the court in vacating the temporary restraining order previously issued, and denying the motion for an injunction, pending the suit.

The appellant's first exception is to the refusal of His Honor to place the cause on the summons docket, in order to a jury trial of disputed facts, and his proceeding, himself, to pass upon the evidence. The essential averments in the complaint upon which the equitable claim to relief depends, are not controverted in the answer, and there is no such repugnancy in the allegations of the parties as requires the elimination of issues and the intervention of a jury, at least in this preliminary stage of the proceeding, and it was entirely proper for the court to act upon the case presented in the complaint and to refuse the interlocutory order. But were it otherwise, the action of the court is sustained by the decision in *Jones* v. *Boyd*, 80 N. C., 258. In that case the defendant appealed from an interlocutory judgment, awarding an injunction and appointing a receiver to take possession of the property in dispute, and the court discussing the effect of the late constitutional amendment enlarging its jurisdiction, say : " Without undertaking to define the limits to which our appellate power is carried by this change, it is sufficient to say, it embraces the present appeal and *requires*

*us to examine the evidence and to determine the facts,* as well as the law arising thereon, in revising the subject matter of the appeal." The decree was accordingly reviewed and reversed.

The plaintiffs' second and principal exception involving the merits of their application, is to the refusal of the court to continue in force the restraining order until the final hearing of the cause.

It does not appear that the plaintiffs were engaged in catching fish when they began the action, or then had any immediate need of the stakes for spreading their nets, and that they could not replace any which should be removed, in ample time for the fishing season, and at a price easily ascertained and measurable in damages, and if so, they could in a proper action for the injury recover full and adequate compensation. Without, therefore, conceding the plaintiffs' right to the remedy sought, even upon the assumption of the truth of the matters set out in their complaint, or that they show a case of irreparable injury, entitling them to the exercise of the preventive power of the court, according to the usages of equity practice, we proceed to consider their claim to protection upon its merits.

Since the decision in the two appeals in *Collins* v. *Benbury,* 3 Ired., 277, and 5 Ired., 118, the law has been considered settled in regard to the right of fishing in the navigable waters of the state, and the results are summarized and approved in *Skinner* v. *Hettrick,* 73 N. C., 53, in these words:

1. "While the owner of a beach has the right of drawing his seine to his beach in exclusion of others, yet he cannot acquire the sole right of fishing independent of all others, in a certain portion of the waters of the sound."

2. "At common law there could not be a several fishery in a navigable stream."

3. "Every citizen of the state has the liberty and privilege of fishing" in the waters of Albemarle sound.

4. " The regulation of the right of fishing in navigable streams is a proper subject of legislation."

These propositions are sustained by the courts of New York and Pennsylvania in the cases cited in the argument for defendant. *Lowndes* v. *Dickenson*, 34 Barb., 586 ; *Fishing Co.* v. *Carter*, 61 Penn., 21.

The general assembly has undertaken, in a degree, by the act of March 28, 1875, entitled " an act in relation to fishing in Albemarle sound and certain rivers," to prescribe the terms and conditions under which pod-nets, requiring stationary posts, may be used, and makes the rights of this class of fishermen subservient to those who operate their seines from the shore, in the manner intended by the defendant. The provisions of the act are in substance, as follows :

Section two makes it unlawful for any person to set or fish with a dutch or pod-net within half a mile to the eastward or westward of the outside windlasses or watch-blocks of *any seine-fishery* on said sound, and section three requires the removal of all stakes " by the first day of June next succeeding the fishing season."

Section four declares that " if any person shall set or fish any dutch-net or pod-net in said sound in violation of this act, he shall be guilty of a misdemeanor," punishable with fine or imprisonment, and be " subject to a further penalty of three hundred dollars, recoverable by suit in the superior court of the county wherein the offence shall have been committed." It also provides that the sheriff " shall, when requested, remove any portion of such nets set or fished in violation of this act, at the cost of the offender, except those stakes heretofore driven down, which shall be removed by such sheriff at the costs of the person requesting it. Acts 1874–'75, ch. 115.

The act does not in terms profess to confer special or peculiar privileges upon those who employ pod-nets in fishing

nor is such its legal effect. On the contrary it imposes limitations upon this mode of exercising a common right, and forbids interference with "*any seine-fishery in operation on said sound*," and this applies not only to fisheries worked at the date of the passage of the act, but to all that should be thereafter opened and operated on its shores. The manifest purpose of the legislation is to regulate the use of a common right among those two classes of fishermen, and to encourage the development of a great industry from which such large supplies of food are attained, and to protect it from needless molestation during the season for taking fish. The preference given to seine-fisheries, whether because of their greater value and importance or that this mode of using the waters is not inconsistent with the common right in others, while the use of pod-nets is, is recognized in the opinion declared in *Skinner* v. *Hettrick*, already referred to. In that case the plaintiff sought to restrain the defendant from putting down and maintaining a line of stakes used for their pod-nets which obstructed the plaintiff's seine in the waters adjacent to his beach, and SETTLE, J., says : "The defendant by driving stakes for a mile and a quarter into the sound, made an *exclusive appropriation to his own use* of that portion of the sound, embraced within his pond, and materially interfered with the common right of fishing as it had been enjoyed by all those operating the Long Beach fishery for many years." * * * "We are of the opinion that the plaintiff is entitled to have the defendant enjoined from appropriating *exclusively to his own use* any portion of the waters of the sound, without calling to his aid the act of 1874–'75, which has already been referred to. We will remark, however, that we think the legislature had the right to pass the act under its power to regulate the right of fishing."

In this connection and as further evidence of the favoring disposition of the general assembly towards the seine-fisheries and of the public policy in fostering and protecting them,

we refer to the act of March 17th, 1875, by the provisions of which lands covered by navigable waters may be entered, and a preferable right acquired to the use of its waters for " drawing or hauling nets or seines therein for the purpose of catching or taking fish," by those who may make the entry and by clearing out and removing " logs, roots, stumps or other obstructions," prepare and fit them to be fished. Acts 1874–'75, ch. 183.

If then the defendant may require his seine-ground, under the decision of the court and the act of March 2d, 1875, to be freed from the interfering stakes of the pod-nets while in actual use, his right is not less clear to have them removed, and to remove them himself, when necessary to put his fishery in operation and in making immediate preparation therefor. This is all that the defendant intended to do, and this constitutes the gravamen of the plaintiffs' complaint.

The act requires that the stakes put up by the pod-net fisherman shall be moved by the first of June next after the fishing season, and his failure to do so subjects him to a criminal prosecution and penalty. The presence of them in the sound after that date is a public nuisance, and this court is asked to assist him in maintaining it in violation of his duty under the law and to prevent its being abated. The proposition is a novel one and no court will listen to such an application.

While it is true as insisted for the plaintiffs that an action will not lie against a person unlawfully obstructing a highway, at the instance of one who has sustained *no special damage,* and redress must be sought for the public wrong on behalf of the public, it by no means follows that a person obstructed, or indeed any one else, may not himself remove the impediment to his passing without incurring personal liability to the owner of the property removed. Certainly no court would entertain a claim for compensation for an

act abating a public nuisance, when no unnecessary damage is done to the property removed.

We think the court properly refused to make the restraining order, and there is no error therein.

No error. Affirmed.