J. K. and P. L. REA v. WM. H. HAMPTON and JAMES B. NICHOLS.

*Constitution—Statute—General Assembly—Fisheries—Navigable Waters—Nuisance—Injunction.*

1. The Legislature has complete authority to regulate the manner of exercising the common right of fishing in the navigable waters within this State, and to make provision for the removal of any obstruction and nuisance thereto.

2. The statute—*The Code*, § 3383—making it unlawful for persons to fish with Dutch or Pod nets in certain waters, and authorizing the Sheriff to remove them, when so employed, is not in conflict with the Constitution.

This was an APPEAL from a judgment of *Graves, J.,* rendered at February Term, 1888, of BERTIE Superior Court, granting a perpetual injunction restraining the defendant from removing the stakes of the plaintiff under § 3383 of *The Code.*

The plaintiffs, in substance, alleged that they were the owners of certain traps and lawfully and rightfully engaged in fishing in the waters of Albemarle Sound, near the Bertie shore, and were operating certain traps for taking fish, called Long Island Fish Traps, and that the defendant threatened to tear down and destroy said traps, and unless restrained great and irreparable damage will be sustained by the plaintiffs, and they ask for an injunction.

The answer of the defendants admits that the plaintiffs were the owners of certain traps, but deny that they were Long Island Traps, or that the plaintiffs were rightfully and lawfully fishing in Albemarle Sound, and say that they were using Dutch or Pod nets, and fishing with traps, and within the distance from the mouth of Roanoke River prohibited by § 3383 of *The Code.*

The following is the case settled on appeal.

The defendants had applied to the Sheriff of Bertie County to remove the nets, &c , of the plaintiffs, in accordance with § 3383 of *The Code*, alleging the nets of plaintiffs to be Dutch nets or Pod nets, and that they were fished within two miles of the mouth of Roanoke River, and they were proceeding to remove the same.

Thereupon the plaintiffs brought this action to restrain the defendants, and the same coming on to be heard, and it appearing that there were two questions of fact arising in the case, his Honor empanelled a jury to ascertain the same for his information, and submitted to them the following issues:

Were the nets fished by plaintiffs Dutch or Pod nets?

Were the nets fished within two miles of the mouth of Roanoke River?

To both of said issues the jury responded, Yes.

Thereupon the plaintiffs moved for judgment for a perpetual injunction, notwithstanding the findings of the jury, and the defendants moved for a judgment dissolving the injunction.

His Honor rendered judgment as prayed by the plaintiffs, and the defendants appealed.

*Messrs. Pruden & Vann,* filed a brief for the plaintiffs.

*Mr. Geo. V. Strong* (and *Mr. J. E. Moore,* filed a brief), for the defendants.

DAVIS, J., (after stating the case). By § 3383 of *The Code,* it is made " unlawful for any person to set or fish a Dutch net or Pod net in Roanoke River, Cashie or Middle River, or within two miles of the mouth of said rivers, or within one mile of the mouth of any other river emptying into Albemarle Sound, * * * * and all persons who shall set or fish any such net in said sound, shall pull up and remove the stakes used for the same by the first day of June next

succeeding the fishing season, and if any person shall set or fish any Dutch net or Pod net in said sound, in violation of this section, he shall be guilty of a misdemeanor, and be subject to a penalty of three hundred dollars to be recovered by any person in the Superior Court of the County in which the offence shall be committed. And the Sheriff of such County shall, when requested, remove any portion of such nets set or fished in violation of this section, at the cost of the violators," &c.

The facts found show that the plaintiffs were fishing in Albemarle Sound with Dutch or Pod nets, and within two miles of the mouth of Roanoke river, in violation of § 3383 of *The Code*, under which the defendants claimed the authority to have plaintiffs' nets removed, but counsel for plaintiffs insist that the last clause § 3383 is in violation of section 17 of article 1, of the Constitution, and if so they had a right to enjoin the defendants. This presents the question : Were the defendants threatening or about to deprive the plaintiffs of any liberty, privilege or property contrary to the law of the land ?

Albemarle Sound being navigable, the plaintiffs had no right to a several fishery in its waters, and the State had the undoubted right to regulate the exercise of the common rights of fishing therein, and to impose such limitations and restrictions on the exercise of the rights as it might deem wise and just.

The Constitution of the State, unlike that of the United States, contains limitations on, and not grants of, legislative power. Albemarle Sound being navigable, is not subject to entry, and every citizen of the State has the liberty and privilege of fishing therein, subject to such *regulations* of the right as the Legislature may establish. *Cready* v. *Virginia,* 94 U. S. Reports, 391 ; *Skinner* v. *Hettrick,* 73 N. C., 53 ; *Hettrick* v. *Page,* 82 N. C., 65, and cases cited. Unless the plaintiffs have some right, privilege or property in these

waters, or some right to obstruct others in the use of them for fishing purposes, under rules and regulations and by methods allowed by law, we fail to see what right they have to complain, unless that right be to invoke the Constitution as a protection to them in violating the law.

The relief sought in *Hettrick* v. *Page, supra,* was not unlike that sought by the plaintiff in this action. It was, like this, an application for an injunction to prevent the removal of stakes or any obstruction of the plaintisffs' in their use, which the defendants were threatening to do, under Chapter 115, of the Acts of 1875. (*The Code,* § 3383.) In that case the stakes were put up for operating pod nets in violation of the Act, and they were required to be removed by the day named. The Chief Justice said: "The presence of them (the stakes) in the sound after that date is a public nuisance, and this Court is asked to assist him (the plaintiff) in maintaining it in violation of his duty under the law, and to prevent its being obeyed. The proposition is a novel one, and no Court will listen to such an application."

While it is true, as insisted by the plaintiff, that an action will not lie against a person unlawfully obstructing a highway at the instance of one who has sustained *no special damage,* and redress must be sought for the public wrong on behalf of the public, it by no means follows that a person obstructed, or indeed, any one else, may not himself, remove the impediment to his passing without incurring personal liability to the owner of the property removed."

The question of the constitutionality of the act was not raised in *Hettrick* v. *Page,* as in this, and we are referred by counsel to *Hoke* v. *Henderson,* 4 Dev., 1, and to *Vann* v. *Pipkin,* 77 N. C., 408. We fail to see the analogy between those cases and this. They only decide that a person holding an office has a property in his office, of which he cannot be deprived while the office remains, without violating the Con-

stitution—it is property of which he cannot be deprived "but by the law of the land."

The counsel also cites Cooley Const. Lim., 362, *et sequiter* *Ames* v. *Port Huron Co.*, 11 Mich., 139; *Rockwell* v. *Moring*, 35 N. Y., 302, and *Wynham* v. *The People*, 3 Kernan, N. Y. Court of Appeals, 378. It is said in Cooley Const Lim., " A vested *right of action is property in the same sense in which tangible things are property*, and is equally protected against arbitrary interference. * * * * * * * * * Nor can a party, by his misconduct, so forfeit a right that it may be taken from him without judicial proceedings, in which the forfeiture shall be declared in due form. Forfeitures of rights and property cannot be adjudged by Legislative Acts, and confiscation without a judicial hearing after due notice, would be void, as not having due process of law. * * * * * * And if the Legislature cannot confiscate property or rights, neither can it authorize individuals to assume, at their option, powers of police which they may exercise in the condemnation and sale of property against their regulations, or for the satisfaction of their charges and expenses in its management and control, rendered or incurred without the consent of its owners. And a statute which authorizes a party to seize the property of another without process or warrant and sell it without notification to the owner for the punishment of a *private trespass* and to enforce a penalty against the owner, can find no justificat'on in the Constitution."

As the Legislature had the undoubted right to regulate the manner in which the right of fishing in Albemarle Sound should be exercised, the plaintiffs had no *right* to fish in its waters in any mode not allowed by law. The facts found show that they were fishing in violation of law, and it would be singular if they could ask the *law* to protect them in its violation.

They had put their stakes and used their nets where it

was unlawful to put and use them. The stakes and nets were unlawfully there by the act of the plaintiffs, and not against their *"consent,"* as were the trespassing animals in *Rockwell* v. *Moring,* cited by Judge Cooley, and if they did not remove them and thus abate the nuisance themselves, they could be removed and the nuisance abated in the mode prescribed in the act regulating fishing in the sound. Judge Cooley, in discussing the police power of the State, says "that each State has complete authority to provide for the abatement of nuisances, whether they exist by the fault of individuals or not." He also says "the State has the authority to make extensive and varied regulations as to the time, mode and circumstances in and under which parties shall assert, enjoy or exercise their right without coming in conflict with any of those constitutional principles which are established for the protection of private rights or private property." Cons. Lim., 596.

Upon a careful examination of the authorities cited by the learned counsel for the plaintiff, we do not think that they warrant the conclusion that the act in question is unconstitutional. The plaintiffs had no such "vested rights" as were contemplated in the citation of counsel from Cooley's Cons Lim.

The case of *Ames* v. *The Port Huron Log Driving and Booming Co.,* 11 Mich., 139, in which an Act of incorporation which gave to the defendant company extensive powers over the logs and lumber of others on the Black River, a navigable stream, was held to be unconstitutional, would seem to support the plaintiff's position, but it will be found upon examination, that it violated the Constitution of Michigan, which declares that "no navigable stream in this State shall be either bridged or dammed without authority of the Board of Supervisors of the proper county, under the provision of law. No such law shall prejudice the right of

individuals to the free navigation of such streams." The act of incorporation was in violation of that provision.

In *Rockwell* v. *Moring,* so much of an act of the Legislature of New York relating to animals running at large, as authorized the seizure and sale of animals trespassing within private enclosure without notice to the owner, and without any judicial process, and as a mere penalty for a *private* trespass, was declared unconstitutional. That case has no analogy to the case before us, neither has the case of *Wyneham* v. *The People*, which was discussed at great length, and in which the Court was singularly divided, and in which it was declared that an "Act for the prevention of intemperance, pauperism and crime," which made no discrimination between liquor owned when the act took effect and that which might afterwards be manufactured or imported, was unconstitutional.

It is said that the "cost" of removing the stakes and nets is left arbitrary—the answer is, that depends upon the labor and expense attending the removal, and must of necessity be uncertain, but the cost must be reasonable, and if excessive charges are made the owner is not obliged to pay more than what may be adjudged to be just and reasonable. Doubtless the stakes and nets are valuable, and it would be the duty of the Sheriff to remove them with as little injury and cost as practicable. If owners of nets and stakes wish to avoid any question as to the *quantum* of costs, &c., which they are not precluded by any law from doing, they can do so by removing them themselves.

There is error in the judgment of the Court below.

Reversed.